ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| DRIVEN P.S.C., EN SU CARÁCTER DE SINDICO DE NODUS INTERNATIONAL BANK, INC.<br><br>Apelada<br><br>v.<br><br>ARTHUR PENAS VARELA, ET ALS<br><br>Apelante | **TA2026AP00543** | *Apelación* acogida como *Certiorari*[1] procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2024CV11462<br><br>Sobre: Cobro de dinero y Ejecución de Gravamen Mobiliario |

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de junio de 2026.

Comparece ante nos el Sr. Arthur Penas Valera (señor Penas o "el peticionario") y nos solicita que revisemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 28 de abril de 2026. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* a la *Solicitud Urgente de Relevo de Sentencia* instada por el peticionario.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** expedir el recurso de *certiorari*.

### I.

El 13 de diciembre de 2024, Driven, P.S.C. (Driven o "parte recurrida") en su carácter de Síndico de Nodus International Bank, Inc. (Nodus) presentó una *Demanda* sobre cobro de dinero y ejecución de gravamen mobiliario contra B-Ahee, LLC (B-Ahee) y el señor Penas. Alegó

---

[1] Acogemos el recurso de apelación instado como una petición de *certiorari*, por ser este el recurso adecuado para revisar la denegatoria del foro primario a una solicitud post-sentencia. Conservamos el número alfanumérico para propósitos administrativos.

que, el 21 de marzo de 2019, Nodus, como acreedor, y B-Ahee, como deudor, suscribieron un *Contrato de Línea de Crédito,* mediante el cual le concedió a B-Ahee una línea de crédito no rotativa por la cantidad máxima de hasta $1,440,000.00. Asimismo, esbozó que el 21 de marzo de 2019, suscribieron un *Acuerdo de Garantía Mobiliaria* para garantizar el *Contrato.* Añadió que, en la misma fecha, el peticionario suscribió una *Garantía Personal Continua, Solidaria e Ilimitada*, mediante la cual garantizó solidariamente el pago de todas las obligaciones presentes y futuras de B-Ahee para con Nodus. No obstante, sostuvo que para el 17 de octubre de 2024, el peticionario adeudaba a Nodus una suma no menor de $1,650,709.94, encontrándose dicha cantidad vencida, liquida y exigible.

El 13 de diciembre de 2024, Driven presentó una *Solicitud de Orden de Emplazamiento por Edicto*.[2] Arguyó que, debido a que el peticionario no residía en Puerto Rico, ni tenía oficinas dentro de la jurisdicción de Puerto Rico, no era posible emplazarlos personalmente.

El 19 de diciembre de 2024, el foro primario notificó una *Orden*, mediante la cual declaró *Con Lugar* la moción y ordenó el emplazamiento de B-Ahee y del señor Penas por edicto.[3]

Posteriormente, el 21 de febrero de 2025, la parte recurrida presentó una *Moción Informativa Sometiendo Evidencia de Emplazamiento por Edicto Diligenciado*.[4] En esta, informó que el edicto había sido publicado el 10 de enero de 2025 en el periódico *The San Juan Daily Star*.

---

[2] *Solicitud de Orden de Emplazamiento por Edicto*, entrada núm. 2 en SUMAC.
[3] *Orden*, entrada núm. 3 en SUMAC.
[4] *Moción Informativa Sometiendo Evidencia de Emplazamiento por Edicto Diligenciado*, entrada núm. 8 en SUMAC.

A su vez, incluyó copia de la Declaración Jurada por Ray Abner Ruiz Berrios, el "*Advertising Control Clerk*" del periódico *The San Juan Daily Star*. Finalmente que había notificado mediante servicio postal internacional con acuse de recibo: copia de la demanda, orden de emplazamiento por edicto, el emplazamiento por edicto expedido, y el emplazamiento por edicto publicado en el periódico.

El 25 de febrero de 2025, el foro primario notificó una *Orden*, mediante la cual le solicitó Driven acreditara la entrega del correo y los fundamentos por los cuales "*priority mail*" era una forma de servicio de entrega de correspondencia con acuse de recibo bajo la Regla 4.6 de Procedimiento Civil.[5]

El 4 de marzo de 2025, la parte recurrida presentó una *Moción en Cumplimiento de Orden*, en la cual indicó lo siguiente:[6]

> […] el servicio utilizado de "*priority mail*" es del mismo Servicio Postal de los Estados Unidos de América y no de un tercero autorizado por el Servicio Postal. Asimismo, el servicio utilizado incluye un *signature confirmation* de parte de quien recibe las cartas enviadas. Lo anterior surge, de la factura del Servicio Postal de los Estados Unidos de América incluido como anejo en la *Moción Informativa Sometiendo Evidencia de Emplazamiento por Edicto Diligenciado*.
>
> De este modo, la parte que recibe la correspondencia a través del "*priority mail*", en este caso las notificaciones de conformidad con la Regla 4.6 de Procedimiento Civil de Puerto Rico, confirma e indica que ha recibido tal correspondencia, tal como lo haría por correo certificado con acuse de recibo.
>
> Asimismo, la utilización del sistema de "*priority mail*" ha sido avalado por el Tribunal Supremo de Puerto Rico como un

---

[5] *Orden*, entrada núm. 9 en SUMAC.
[6] *Moción en Cumplimiento de Orden*, entrada núm. 10 en SUMAC.

mecanismo apropiado para la notificación de recursos.

El 7 de marzo de 2025, el foro de instancia notificó una *Orden*, en la cual dio por cumplida su orden y tomó nota del envío por correo prioritario y la hoja de rastreo donde surgía que la correspondencia había sido devuelta al remitente.[7]

El 23 de junio de 2025, Driven presentó una *Moción Informativa sobre Artículo 15 del Convenio de la Haya*.[8] Expuso que, en un ejercicio de abundancia de precaución, había retenido los servicios de *Process Server One*, entidad dedicada y especializada en diligenciamientos de emplazamientos internacionales. A su vez, mencionó que el 11 de febrero de 2025, dicha entidad había enviado una notificación a la Autoridad Central de Venezuela sobre la *Demanda*, utilizando el formulario *Resquest for Service of Judicial or Extrajudicial Documents*, según establece el Convenio de la Haya, dirigida hacia los Consultores Occidentales y Fernández-Gallardo. Por ello, esbozó que se debía proveer un término, al menos de 6 meses desde la notificación a la Autoridad Central de Venezuela, antes de que se emita dictamen o Sentencia en Rebeldía contra la parte peticionaria.

El 6 de agosto de 2025, el foro primario notificó una *Orden*, solicitándole a la parte recurrida que informara el progreso de los trámites para emplazar conforme al Artículo 15 del Convenio de la Haya.[9]

El 17 de septiembre de 2025, la parte recurrida presentó una *Moción en Cumplimiento con Orden*, mediante la cual informó que habían estado en comunicación con

---

[7] *Orden*, entrada núm. 11 en SUMAC.
[8] *Moción Informativa sobre Artículo 15 del Convenio de la Haya*, entrada núm. 12 en SUMAC.
[9] *Orden*, entrada núm. 13 en SUMAC.

los representantes de *Process Server One*, quienes han intentado comunicarse con la Autoridad Central de Venezuela en múltiples ocasiones, pero no han tenido éxito.[10]

Luego de varias incidencias procesales, el 28 de octubre de 2025, la parte recurrida presentó una Moción en *Solicitud de Anotación de Rebeldía y para que se Dicte Sentencia en Rebeldía*.[11] Señaló que, transcurrido el término de 6 meses desde la notificación a la Autoridad Central de Venezuela, la misma no se había comunicado con *Process Server One* y la parte peticionaria no había comparecido. Por lo tanto, solicitó se dictara sentencia en rebeldía y condenara al peticionario al pago de lo reclamado en la *Demanda*.

El 3 de noviembre de 2025, el foro primario notificó una *Sentencia en Rebeldía*, mediante la cual le anotó la rebeldía al peticionario y declaró *Con Lugar* la demanda.[12] Concluyó que, la parte peticionaria había incumplido con sus obligaciones de pago bajo el *Contrato* y los *Pagarés*, por lo que, debía satisfacer la cantidad ascendente a $2,174,174.60 al recurrido.

El 16 de diciembre de 2025, Driven presentó una *Moción Informativa Sometiendo Evidencia de Publicación de Sentencia por Edicto*. En esta, informó que el 5 de noviembre de 2025, había sido publicada la *Sentencia* en el periódico Primera Hora.

El 9 de febrero de 2026, el señor Penas presentó una *Solicitud Urgente de Relevo de Sentencia* al amparo

---

[10] *Moción en Cumplimiento con Orden*, entrada núm. 14 en SUMAC.
[11] *Solicitud de Anotación de Rebeldía y para que se dicte Sentencia en Rebeldía*, entrada núm. 18 en SUMAC.
[12] *Sentencia en Rebeldía*, entrada núm. 21 en SUMAC.

de la Regla 49.2 de las Reglas de Procedimiento Civil.[13] Alegó que, el foro primario carecía de jurisdicción personal sobre el peticionario, puesto que, la parte recurrida incumplió con los requisitos de notificación conforme la Regla 4.6(a) de las Reglas de Procedimiento Civil. En la alternativa, señaló desconocer la entidad B-Ahee y negó haber firmado los documentos adjuntos en la *Demanda*.

En respuesta, el 1 de abril de 2026, Driven presentó su *Oposición a Solicitud de Relevo de Sentencia (#SUMAC 46)*.[14] Resaltó que había cumplido a cabalidad con las exigencias de las Reglas de Procedimiento Civil y del Convenio de la Haya. Asimismo, sostuvo que de la evidencia presentada demostró que el señor Penas era el accionista mayoritario de B-Ahee. A su vez, el Registro de Corporaciones del Estado de Florida, en el cual había sido incorporado B-Ahee, indicaba que el peticionario era uno de los "*managers*" de B-Ahee. También, dispuso que, conforme surgía del *Estado de Situación Financiera* al 31 de agosto de 2020, propiamente firmado por el peticionario había sido inversionista y/o accionista en un 60% de B-Ahee. Por ello, reiteró que era una contradicción lo estipulado por el señor Penas, dado que múltiples documentos lo vinculaban con B-Ahee.

El 24 de abril de 2026, el peticionario presentó una *Réplica a Oposición a Solicitud Urgente de Relevo de Sentencia*.[15]

---

[13] *Solicitud Urgente de Relevo de Sentencia*, entrada núm. 25 en SUMAC.
[14] *Oposición a Solicitud de Relevo de Sentencia (#SUMAC 46,* entrada núm. 32 en SUMAC.
[15] *Réplica a Oposición a Solicitud Urgente de Relevo de Sentencia,* entrada núm. 33 en SUMAC.

Evaluadas las mociones, el 28 de abril de 2026, el foro primario notificó la *Orden* recurrida, mediante la cual declaró *No Ha Lugar* la solicitud de relevo de sentencia instada por el peticionario.[16]

Inconforme, el 28 de mayo de 2026, el peticionario presentó el recurso de epígrafe, mediante el cual expuso los siguientes señalamientos de error:

**PRIMER SEÑALAMIENTO DE ERROR**
ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR EL RELEVO DE SENTENCIA TODA VEZ QUE EL SÍNDICO INCUMPLIÓ SISTEMÁTICAMENTE CON LOS REQUISITOS DE LA REGLA 4.6(a) DE LAS REGLAS DE PROCEDIMIENTO CIVIL, LO QUE PRIVÓ AL TPI DE JURISDICCIÓN PERSONAL SOBRE EL APELANTE Y HACE NULA LA SENTENCIA EN REBELDÍA.

**SEGUNDO SEÑALAMIENTO DE ERROR**
ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL VALIDAR LA ACTUACIÓN DEL SÍNDICO BAJO EL ARTÍCULO 15 DEL CONVENIO DE LA HAYA, CUANDO LA PROPIA EVIDENCIA DEL SÍNDICO ESTABLECÍA QUE EL PROCESO VENEZOLANO ORDINARIAMENTE TOMA ENTRE 12 Y 18 MESES, Y LA SENTENCIA EN REBELDÍA SE DICTÓ A SÓLO 8 MESES DE LA NOTIFICACIÓN A LA AUTORIDAD CENTRAL.

**TERCER SEÑALAMIENTO DE ERROR** (EN LA ALTERNATIVA)
ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONCEDER EL RELEVO DE SENTENCIA POR NEGLIGENCIA EXCUSABLE, CUANDO EL APELANTE COMPARECIÓ OPORTUNAMENTE, PRESENTÓ DEFENSAS MERITÍSIMAS SOBRE LAS QUE NO HUBO ADJUDICACIÓN, Y EL RELEVO NO CAUSA PERJUICIO IRREPARABLE A LA PARTE APELADA.

El 2 de junio de 2026, emitimos una *Resolución* en la que informamos que acogíamos el recurso como uno de *certiorari* y le concedimos a la parte recurrida el término de quince (15) días para que presentara su oposición al recurso.

El 11 de junio de 2026, Driven presentó su *Oposición a Expedición del Recurso de Certiorari y/o Alegato en Oposición*.

---

[16] *Orden*, entrada núm. 34 en SUMAC.

Contando con el beneficio de las partes, procedemos a atender el recurso ante nuestra consideración.

**II.**

**-A-**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *León v. Rest. El Tropical,* 154 DPR 249 (2001). La Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019). Las resoluciones u órdenes post-sentencia no están comprendidas de forma expresa bajo ninguno de los incisos de la mencionada Regla. Este tipo de recurso debe evaluarse bajo los parámetros establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), sobre los criterios para la expedición del auto de *certiorari*. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012).

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, debido a que, eso constituiría un abuso de discreción. *García v. Padró,* 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Íd*.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios

anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**-B-**

Sabido es que la figura jurídica de la rebeldía se define como la posición procesal en la que se coloca a la parte que ha dejado de cumplir con un deber procesal o de ejercitar su derecho de defenderse. Regla 45 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 45.2. El propósito aspirado por la anotación de rebeldía es disuadir a que las partes incurran en prácticas dilatorias como estrategia litigiosa. *Martínez v. Inst. Cardiopulmonar*, 213 DPR 221, 228 (2023); *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 100 (2002).

La Regla 45.1 de las de Procedimiento Civil, *supra*, expone las situaciones en las cuales procede la anotación de rebeldía, a saber:

> Cuando una parte contra la cual se solicite una sentencia para conceder un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o la Secretaria anotará su rebeldía.

> El tribunal, a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).

> Esta anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).

> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

La precitada regla provee un remedio para las situaciones en las cuales el demandado no comparece a contestar la demanda o no se defiende de ninguna otra forma, por lo que no expone alegación o defensa alguna contra las alegaciones y el remedio solicitado. Además, aplica como sanción en aquellas instancias en las que alguna parte en el pleito ha incumplido con alguna orden del tribunal. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 589 (2011). Una consecuencia de la anotación de rebeldía es la facultad del tribunal para dictar una sentencia en rebeldía. Regla 45.2 de las de Procedimiento Civil, *supra*.

La anotación o denegatoria de anotación de rebeldía depende de que se hayan satisfecho los requisitos que establece la referida Regla 45.1 de las de Procedimiento Civil, *supra*. La rebeldía es un mecanismo procesal discrecional para el foro primario, pero no se puede ejercer burda o injustamente. Así, la anotación de rebeldía o un dictamen en rebeldía contra una parte como sanción por su incumplimiento con una orden del tribunal debe desarrollarse dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción. *Rivera Figueroa v. Joe's European Shop*, supra, pág. 590; citando a *Díaz v. Tribunal Superior*, 93 DPR 79 (1966). Cuando se le anota la rebeldía a una parte, se dan por admitidos todos los hechos bien alegados en la demanda o la alegación que se haya formulado contra el rebelde y se autoriza al tribunal para que dicte sentencia, si esta procede como cuestión de derecho. *Rivera Figueroa v. Joe's European Shop*,

supra, pág. 590; citando a *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809 (1978).

En lo concerniente, la Regla 45.3 de las Reglas de Procedimiento Civil, *supra*, dispone que el tribunal podrá dejar sin efecto una anotación de rebeldía por causa justificada y, cuando se haya dictado sentencia en rebeldía, asimismo, podrá dejarla sin efecto de acuerdo con la Regla 49.2 de dichas Reglas. *Román Cruz v. Díaz Rifas*, 113 DPR 500, 506-507 (1982). La parte podría presentar evidencia de circunstancias que, a juicio del tribunal, demuestren justa causa para la dilación o probar que tiene una buena defensa en sus méritos y que el grado de perjuicio que se puede ocasionar a la otra parte con relación al proceso es razonablemente mínimo. *Rivera Figueroa v. Joe's European Shop*, supra, pág. 593.

Es menester señalar, que la notificación de la anotación de rebeldía es innecesaria si el rebelde no ha comparecido al pleito previamente. *González v. Chávez*, 103 DPR 474, 476 (1975). Esto es porque la anotación de rebeldía implica la renuncia a toda notificación posterior. Empero, en el contexto de un cobro de dinero, si la deuda es ilíquida, resulta necesaria la celebración de una audiencia para precisar la cuantía; lo cual sí, como cuestión de debido proceso de ley, haría conveniente la notificación al rebelde. Véase J.A. Cuevas Segarra, *Tratado de Derecho Procesal Puertorriqueño,* San Juan, Ed. Publicaciones JTS, 2000, T. II, pág. 752-757.

Ahora, por ser contraria a la política pública relativa a que los casos se ventilen en los méritos, las sentencias dictadas en rebeldía no son totalmente favorecidas por nuestro ordenamiento. J.A. Cuevas

Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Estados Unidos, Pubs. JTS, 2011, T. IV, pág. 1349. Por lo tanto, la interpretación de esta regla debe ser liberal, lo que implica que cualquier duda se debe resolver a favor de dejar sin efecto la sentencia emitida para que el caso se pueda adjudicar en los méritos. *Vázquez v. López*, 160 DPR 714, 726 (2003).

-C-

Como es sabido, toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. Sólo en ciertos escenarios nuestro ordenamiento procesal civil le permite a una parte solicitar el relevo de los efectos de una sentencia dictada previamente en su contra. *López García v. López García,* 200 DPR 50, 59 (2018). El relevo de sentencia es un mecanismo post-sentencia que capacita al juzgador a eliminar o modificar su dictamen con el objetivo de hacer justicia. *Piazza v. Isla del Río, Inc.*, 158 DPR 440, 479 (2003); *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445, 449 (1977). Este remedio es extraordinario, discrecional y se utiliza para impedir que tecnicismos y sofisticaciones frustren los fines de la justicia. *Pérez Ríos et al. v. CPE*, 213 DPR 203 (2023); *Vázquez v. López,* 160 DPR 714, 725 (2003).

La Regla 49.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, regula este remedio. La misma dispone que:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) fraude […];

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

[…]

La persona que solicita el relevo de una sentencia está obligada a justificar su solicitud amparándose en una de las causales establecidas en la regla referenciada. *Reyes v. ELA et al.*, 155 DPR 799, 809 (2001). Igualmente, si la parte que solicita el relevo aduce de una buena defensa y el relevo no ocasiona perjuicio alguno a la parte contraria, este debe ser concedido. *García Colón et al. v. Sucn. González*, 178

DPR 527, 540 (2010). Ahora bien, este mecanismo no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación. *Íd.*, pág. 541.

Este mecanismo tiene una función dual:, el cual consiste en adelantar el interés de que los casos se resuelvan en sus méritos, haciéndose justicia sustancial y, por otra parte, finalizar los pleitos. *HRS Erase v. CMT*, 205 DPR 689, 698 (2020); *García Colón et al v. Sucn. González,* 178 DPR 527, 540 (2010). También, nuestro Tribunal Supremo ha establecido que lo dispuesto en la Regla 49.2 de las de Procedimiento Civil, *supra*:

> […] aplica sólo en aquellas raras instancias en que existe un error jurisdiccional o una violación al debido proceso de ley que privó a una parte de la notificación o de la oportunidad de ser oída. Esta regla no provee a las partes licencia para dormirse sobre sus derechos. *López García v. López García*, supra, pág. 61, citando a Cuevas Segarra, *Tratado de Derecho Procesal Civil,* pág. 1415, *op. cit.*

De ordinario, la determinación de relevar a una parte de los efectos de una sentencia está supeditada a la discreción del foro sentenciador. Sin embargo, ello encuentra su excepción en los casos de nulidad o cuando la sentencia ha sido satisfecha. *López García v. López García,* supra; *García Colón et al. v. Sucn. González*, supra. La nulidad de una sentencia por una violación al debido proceso de ley puede materializarse de distintas maneras. *HRS Erase v. CMT,* supra, pág. 699.

Como norma general, las mociones de relevo de sentencia deben presentarse dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia. *HRS Erase v. CMT*, supra, pág. 698. Este término es de

naturaleza fatal en su acción extintiva del derecho. *Sánchez Ramos v. Troche Toro*, 111 DPR 155, 157 (1981). Por ende, transcurrido dicho plazo, no puede adjudicarse la solicitud de relevo. *García Colón et al v. Sucn. González,* supra, pág. 543; *Bco. Santander P.R. v. Fajardo Farms Corp*., 141 DPR 237, 243 (1996). No obstante, tales normas ceden ante una sentencia que adolece de nulidad. *HRS Erase v. CMT*, supra, pág. 698, citando a *Rivera v. Algarín*, 159 DPR 482, 490 (2003).

Es importante consignar que, una moción de relevo de sentencia no puede sustituir los recursos procesales de reconsideración o apelación. *Vázquez v. López,* supra, pág. 726; *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294, 299 (1989). Sin embargo, en ciertas instancias puede concederse aún después de que la sentencia haya advenido final y firme. *Piazza v. Isla del Río, Inc*., supra; *Pagán v. Alcalde Mun. de Cataño*, 143 DPR 314, 328 (1997).

Reiteradamente, se ha establecido que el remedio de reapertura "no es una llave maestra para reabrir a capricho el pleito ya adjudicado." *Piazza v. Isla del Río, Inc*., supra, pág. 449. Por ello, debemos enfatizar que, aunque la reapertura existe en bien de la justicia, esta no constituye una facultad judicial absoluta, toda vez que a este mecanismo procesal se le contrapone la finalidad fundamental de certeza y estabilidad en los procedimientos judiciales, así como la rápida adjudicación de las controversias. Consecuentemente, les corresponde a los tribunales establecer un balance adecuado entre ambos intereses. *Íd.; Fine Art Wallpaper v. Wolff*, 102 DPR 451, 457-458 (1974).

**III.**

En el caso de autos, el señor Penas esencialmente alega que incidió el foro primario al denegar su solicitud de relevo de sentencia, debido a defectos en el emplazamiento por edicto, y al haber aplicado de forma prematura el Convenio de la Haya.

Por su parte, Driven solicita la denegación del recurso por no estar comprendido en las excepciones de la Regla 52.1 de Procedimiento Civil, *supra*, ni discutir ninguno de los criterios de la Regla 40 del Reglamento de este Foro, *supra*. Asimismo, sostiene la validez de las notificaciones emitidas sobre la demanda y el término establecido en el Convenio de la Haya.

De entrada, debemos mencionar que en el presente recurso se recurre de una *Orden* atinente a un asunto post-sentencia, la cual no se encuentra comprendida entre aquellas determinaciones de naturaleza interlocutoria evaluadas al amparo de la Regla 52.1 de Procedimiento Civil, *supra*. En vista de ello, nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra*.

Reevaluada la totalidad del expediente y los argumentos esbozados por el señor Penas a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, no identificamos razón por la cual debamos intervenir. Puesto que, no se presentó ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o post-sentencia en los que el foro de instancia haya sido

arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo.

Ante la ausencia de alguna de las instancias contempladas en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, procedemos a denegar la expedición del auto de *certiorari*.

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones